UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT F.,[1] | ) |
|        Plaintiff, | ) |
| v. | ) No. 1:21-cv-01025-MJD-JRS |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | ) |
|        Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Robert F. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I.  Background**

Claimant applied for DIB and SSI on January 29, 2019, alleging an onset of disability as of August 1, 2008. [Dkt. 14-5 at 2, 8.] Claimant's applications were denied initially and again

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

upon reconsideration, and a hearing was held before Administrative Law Judge Donald D'Amato ("ALJ") on November 6, 2020. [Dkt. 14-2 at 31.] On November 18, 2020, ALJ D'Amato issued his determination that Claimant was not disabled. *Id.* at 13. The Appeals Council then denied Claimant's request for review on February 23, 2021. *Id.* at 2. Claimant timely filed his Complaint on April 26, 2021, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and his conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III.   ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of August 1, 2008. [Dkt. 14-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "ulcerative colitis; recurrent hernias, status post

repairs; diverticulitis, status post Hartman's procedure with sigmoid colectomy; alcohol use disorder; mild osteophyte formation, left knee patella; polycythemia; gout; obesity; panic disorder with agoraphobia; depressive disorder; and anxiety disorder." *Id*. at 19. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR404.1567(b) and 416.967(b) except the claimant requires an unskilled entry level job involving simple routine tasks that can be learned on the job within in [sic] 30 days or less that is non-fast-rate production, defined as involving no conveyor belt or assembly line work and no hourly quotas; cannot function as a member of a discrete team but can work in proximity to co-workers and supervisors with contact largely superficial; occasionally indirect interactive contact with the public; in a "low stress" environment defined as one having only occasional changes in the work setting; can lift and/or carry 10 pounds frequently, and 20 pounds occasionally (from very little up to 1/3 of an 8-hour workday); can stand and/or walk (with normal breaks) for 6 hours in an eight-hour workday, but can do so for only 15 minutes at one time before needing to sit for 2 minutes before resuming standing and/or walking; can sit (with normal breaks) for 6 hours in an eight-hour workday; can perform pushing and pulling motions with the upper and right lower extremities within the aforementioned weight restrictions, but can only do so with respect to his left lower extremity for two-thirds of an 8-hour workday; needs to avoid hazards such as moving machinery and unprotected heights, but does not need to avoid hazards typically found in the workplace such as boxes on the floor or ajar doors; job responsibilities do not involve the use of hand held vibrating or power tools; needs to be restricted to a work environment with good ventilation that allows the individual to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity; a restroom must be on the work premises; can perform occasionally: climbing stairs with handrails, balancing, stooping, crouching, and kneeling, but he needs to avoid climbing ladders, scaffolds, and ropes and crawling; lastly, the claimant requires work that, in addition to any regularly scheduled breaks, allows the claimant to be off task an additional 9% per 8-hour day due to the symptomatology from his impairments.

*Id.* at 20-21.

At step four, the ALJ found that Claimant was not able to perform his past relevant work during the relevant time period. *Id*. at 24. At step five, relying on testimony from a vocational

expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 25. Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 26.

### IV.  Discussion

Claimant alleges disability due to his panic disorder with agoraphobia, depressive disorder, anxiety disorder, history of hernia repairs, diverticulitis, chronic ulcerative colitis, obstructive sleep apnea, gout, and issues with his left knee. In support of his request to reverse the ALJ's unfavorable decision, Claimant argues that the ALJ erred by failing to explain his rationale behind several limitations advanced in Claimant's RFC. Specifically, Claimant asserts that the ALJ's decision lacks any articulation related to his findings that Claimant would only be off-task up to nine percent of a workday and could meet the attendance requirements of competitive employment. [Dkt. 16.] The Court agrees, and thus ALJ D'Amato's decision must be reversed.

Claimant's arguments primarily center around his long history of diverticulitis and chronic ulcerative colitis, both of which the ALJ classified as severe impairments. At his hearing, Claimant testified that these issues require him to use the restroom anywhere from 10 to 20 times a day, each visit lasts from 10 to 30 minutes, and the need to use the restroom is "immediate." [Dkt. 14-2 at 40, 47-48.] Because of these impairments, Claimant underwent a Hartmann's procedure with sigmoid colectomy in 2007, in which 12 inches of his colon were removed. [Dkt. 14-7 at 501; Dkt. 14-2 at 37-38.] Claimant has also been repeatedly hospitalized due to "losing a lot of blood through [his] stool." [Dkt. 14-2 at 40.] His diverticulitis and chronic ulcerative colitis additionally cause chronic pain, and Claimant requires emergency hospitalization when his flare-

ups "don't start to go down" within a few days. *Id.* at 47. He also testified that he has lost more than one job due to his diverticulitis and chronic ulcerative colitis, explaining as follows:

> I just couldn't, you know, perform my duties with the diseases that I have. You know, running back and forth to the toilet all the time, sometimes having to call in and get my shift covered all the time. Because, to be honest with you, I've had two episodes to where I've been driving and I can't control it and I have literally messed myself while I'm driving.

*Id.* at 41.

In response to questioning from the ALJ, the VE testified that, in addition to regularly scheduled breaks, an individual who was off-task for nine percent of an eight-hour workday (about 43 minutes) would not be precluded from work "as long as the jobs were being performed adequately in other regards," but that being off-task for 60 minutes in an eight-hour workday (12.5 percent of the workday) would be work preclusive. *Id.* at 59-60. The VE also testified that an individual requiring work that allows him to miss two days per month would be precluded from all work. *Id.* at 60. In other words, any jobs that the ALJ determined Claimant could perform would require the ability to stay on task for more than 87.5 percent of the workday and would have little tolerance for absences.

In his decision, ALJ D'Amato acknowledged Claimant's gastrointestinal issues as follows:

> At the hearing, the claimant testified that he had regular colitis flares that caused frequent bowel movements and occasional accidents in public. He stated that he had chronic stomach pain and could be in the bathroom for 10 to 30 minutes at a time, up to 10-20 times per day.

*Id.* at 22. Subsequently, the ALJ stated that, "due to his history of colitis, the claimant would require a restroom on the work premises, and work that would permit him to be off task an additional 9% of the workday." *Id.* at 23.

6

The Court agrees with Claimant that the determination that he would be off-task nine percent of the time was "seemingly pulled out of thin air with no basis in the evidence," and "appears to be a completely arbitrary estimation." [Dkt. 16 at 24.] This situation is similar to that in *Harris v. Saul*, 2020 WL 221964 (E.D. Wis. Jan. 15, 2020), in which the court noted that "the ALJ apparently chose the ten percent [off-task] figure because that is where most vocational experts will draw the line between the acceptable and unacceptable, not because it was supported by substantial evidence." *Id.* at *3 (internal citation omitted).

Indeed, not a single medical source opined on the percentage of a workday Claimant's diverticulitis and ulcerative colitis may cause him to be off-task, and the ALJ does not articulate how he reached this percentage whatsoever. In fact, other than the nine percent limitation provided in the RFC, the ALJ neither cited evidence that Claimant could meet the on-task and attendance benchmarks of competitive employment, nor addressed the evidence that he could not. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021). As Claimant underscores, "[t]here are several factors documented within the record that support the likelihood of off-task behavior that would likely exceed the ALJ's arbitrary nine percent determination or the allowable absence rate." [Dkt. 16 at 25.] For example, Claimant's own testimony suggests that he needs to use the restroom 10 to 20 times a day, each visit lasts from 10 to 30 minutes, and that the need to use the restroom is immediate. Moreover, he has previously been let go from jobs due to his inability to maintain consistent attendance. The ALJ fails to confront this evidence. Ultimately, there is no basis for the ALJ's nine percent figure, nor is there any insight into how that figure was reached.

Along the same lines, the ALJ also failed to articulate any consideration of whether Claimant's mental impairments would impact his ability to maintain the attendance and on-task

benchmarks of competitive employment. As noted, the ALJ determined that Claimant's panic disorder with agoraphobia, depressive disorder, and anxiety disorder constituted severe impairments. [Dkt. 14-2 at 19.] However, the ALJ does not connect these findings to the limitations set forth in Claimant's RFC. Most critically, there is no discussion of the limitations resulting from Claimant's agoraphobia, despite the record demonstrating Claimant's ongoing struggles. For example, Claimant arrived 10 minutes late to his psychological consultative examination, after which he noted that "I have a lot of panic attacks and I have agoraphobia with it, too. I'm surprised I made it here, took me 15 minutes just to walk out the front door." [Dkt. 14-7 at 454-55.] This evidence suggests that Claimant may not be able to meet the attendance benchmarks of the workplace, but the ALJ did not confront these issues.

Ultimately, the ALJ erred by failing to articulate the reasoning behind his off-task limitation and implicit determination that Claimant could maintain proper attendance, and thus the requisite "logical bridge" is missing from his decision. Because the ALJ's analysis in these areas does not "say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," remand is necessary. *Lothridge*, 984 F.3d at 1233.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED AND REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 15 JUL 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.